DAN M. WINDER, ESQ.
Nevada State Bar No. 001569
ARNOLD WEINSTOCK, ESQ.
Nevada State Bar No. 000810
SCOTT C. DORMAN, ESQ.
Nevada State Bar. No. 13108
LAW OFFICE OF DAN M. WINDER, P.C.
3507 W. Charleston Blvd.
Las Vegas, NV 89102
Telephone: (702) 474-0523
Facsimile: (702) 474-0631
winderdanatty@aol.com
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>vs.<br><br>TERRY LOMAX,<br><br>                    Defendant. | Case No: 2:17-cr-0262-JAD-PAL |

**CERTIFICATION:** This motion is timely filed pursuant to LCR 12-1(a)(2).

**OBJECTION TO REPORT AND RECOMMENDATION (DOCKET #27) OF THE MAGISTATE JUDGE PEGGY LEAN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOCKET #27 )**

The Defendant, by and through his attorney, Dan M. Winder, submits this Objection to the Order and Report and Recommendation from Magistrate Judge Peggy Lean denying the Defendant's Motion to Suppress. For the reasons discussed below, the Defendant's motion should be allowed and the Magistrate Judge's Order and Report and Recommendation overruled.

## INTRODUCTION

The Defendant is an African American male who has lived in Las Vegas his entire life. The Government sought and received an indictment of the Defendant on August 15, 2017. The Defendant was eventually arrested on this indictment and had a detention proceeding on October 26, 2017. The Defendant has been ordered detained until trial.

## FACTS

The Defendant was in the city of Las Vegas, NV, on May 17, 2017. The Defendant was lawfully operating a vehicle. It was daylight and the occupant, the Defendant, was clearly visible from outside the vehicle. The Defendant is African-American.

The Defendant was travelling north bound on J Street and came to the intersections of Lake Mead Blvd. J Street, where the Defendant was at, has three lanes going northbound where it meets Lake Mead Blvd; a left turn land, straight lane, and a right turn lane. The Defendant intended to turn right on to Lake Mead. The Defendant got in the right hand turn lane, stopped because of the red traffic control light, activated his right hand turn signal and turned right onto Lake Mead Blvd. The Defendant proceeded east on Lake Mead Blvd.

The Defendant traveled east on Lake Mead Blvd. and signaled a lane change, and then changed lanes.

Officers from the Gang Enforcement Unit of the Las Vegas Metropolitan Police Department, were in the left hand turn lane on J Street at the intersection with Lake Mead Blvd. when the Defendant was stopped at the intersection. There was vehicle in between the Defendant and the Gang Enforcement Unit.

The Gang Enforcement officers pulled in front of and around the stopped vehicle in the middle lane and proceeded to follow the Defendant's vehicle. The Gang Enforcement officers then activated their emergency lighting to stop and seize the Defendant.

At the evidentiary hearing, both officers admitted that they did not employ their LVMPD body cams in accordance with departmental policy.

## ARGUMENT

For purposes of this objection the Defendant will reference the objected to portion for clarity of argument.

A. Request for Evidentiary Hearing

The Magistrate Judge (MJ) concluded that an evidentiary hearing was not warranted. The Defendant properly and timely filed there motion to suppress. With the motion and opposition filed was the body cam footage from the LVMPD officers. This base of evidence, the body cam footage and allegations from the Defendant, was sufficient to warrant an evidentiary hearing. The mere fact that the officers, whether by omission or commission, failed to activate their body cameras until late in the incident suggests a willful suppression of the facts and what happened that day and warranted an evidentiary hearing.

B. Lomax was not Seized Until After He Discarded the Firearm

The MJ concludes erroneously that there was no seizure by the officers until after the firearm was discarded. While the MJ cites California v. Hodari D, 499 U.S. 621, this is misplaced when compared with the facts of this case. In Hodari, the defendant was a juvenile that fled at the appearance of law enforcement. In Hodari, there was no activation of emergency lighting by the officers. There was no shouts of "stop" by the officers as in this case. There were no shouts of get on the f****** ground as in this case. Most importantly in this case is the additional force of the officer wielding both his firearm and Taser while shouting these curses at the Defendant.

While it is true that the officer never touched the Defendant when he says he saw the Defendant discard the gun, such a touching is not necessary under these facts. The additional verbal commands and show of force by both the Taser and deadly weapon does that. As state in Terry, *"As we have noted elsewhere: 'Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' Terry v. Ohio, supra, at 19, n. 16 [88 S.Ct., at 1879, n. 16].*

1    All of the authority cited were cases in which there was not the brandishing of firearms by the
2    law officers.  In the Tenth Circuit case of Robinson V. Solano County, 278 F.3d 1007 (2002), it
3    was held that the excessive force used in that case is a violation of the Fourth Amendment.
4    Because Hodar D can be distinguished due to the unique facts of this case, the MJ should have
5    ruled that this Defendant was seized before any discarding of evidence.
6    C.  Reasonable Suspicion is required to Conduct a Traffic Stop
7    The MJ discusses both the reasonable suspicion standard and the actual criminal violation
8    standard in this section.  At the evidentiary hearing, the Defendant believes, that the officers
9    testimony was not credible.  The Defendant contends that they were not.  Both officers were
10   wearing department issued body cams.  These body cams would have shown the violations the
11   Defendant allegedly committed.  Neither officer activated their body cam till well after the
12   "traffic stop" was initiated.  The testimony regarding these devices was that they are always in a
13   continuing record mode.  That the activation by the officer "saves" the video from 30 seconds
14   prior to activation till the officer turns it off.  Here, if either office would have initiated there
15   camera when they observed the Defendant "commit" these traffic violations, the violations
16   would have been captured on camera by the body cams.
17   It is reasonable to ask why these cameras were activated at such a late time.  One officer said
18   that he has trouble with his "fine motor" skills.  The other officer said that he kept the activation
19   button in his pocket.  These devices, per LVMPD dictate, are designed for the preservation of
20   evidence.
21   Clearly heard on the body camera is an accusation that the Defendant is a gang member, "you
22   got the hat bro".  Strangely, neither officer can remember this, but it is verified on the submitted
23   body cam footage.
24
25                                              CONCLUSION
26   The officers in this matter clearly were stopping the Defendant because they thought he was a
27   gang member in a bad neighborhood.  They carried with them the means and the ability to show
28   this Court that Defendant actually committed a traffic violation.  They both were wearing video,

4

that had it been employed according to LVMPD regulation, that would have showed these purported traffic violations.  Neither officer activated there cameras until after all evidence showing the Defendant was driving lawful had been cleared out of the cameras buffers.  The officer's use of force by displaying both a deadly weapon and Taser while shouting obscenities at the Defendant were a seizure under the Fourth Amendment, and all evidence seized should be suppressed over the MJ Report and Recommendations.

This the 30th day of April, 2008

/s/ <u>Dan M. Winder</u>
DAN M. WINDER, ESQ.
Nevada State Bar No. 001569
ARNOLD WEINSTOCK, ESQ.
Nevada State Bar No. 000810
SCOTT C. DORMAN, ESQ.
Nevada State Bar. No. 13108
LAW OFFICE OF DAN M. WINDER, P.C.
3507 W. Charleston Blvd.
Las Vegas, NV 89102
Telephone: (702) 474-0523
Facsimile:  (702) 474-0631
winderdanatty@aol.com
*Attorneys for Defendant*