# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>Plaintiff<br><br>v.<br><br>Terry Lomax,<br><br>Defendant | Case No.: 2:17-cr-00262-JAD-PAL<br><br>**Order Adopting Report and Recommendation; Overruling Objection; and Denying Motion to Suppress**<br><br>[ECF Nos. 15, 27, 30] |

While attempting to flee from police officers who tried to pull him over for alleged traffic violations, Terry Lomax allegedly discarded a handgun and about $1,000. When he was finally apprehended, Lomax told the officers that the money was his, but he denied ownership of the gun. A federal grand jury later returned an indictment, charging Lomax with one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Lomax now moves to suppress the physical evidence and statements he made.[1] Magistrate Judge Leen recommends that I deny the motion.[2] After considering Lomax's objection to Judge Leen's recommendation and reviewing his original motion de novo, I overrule the objection, accept and adopt the recommendation, and deny the motion to suppress.

## Background

Lomax argues that he didn't commit any traffic violations before law enforcement signaled to pull him over and that their stated reasons were merely pretext for their suspicion that he is a gang member.[3] Lomax requested an evidentiary hearing and represented that he intended to testify that he did not commit any traffic violations before the officers turned on their emergency lights to pull him over.[4] Magistrate Judge Leen held the requested evidentiary

---

[1] ECF No. 15.

[2] ECF No. 27.

[3] ECF No. 30 at 4.

[4] ECF No. 27 at 1.

1

hearing, but Lomax ultimately declined to testify.[5] He called no witnesses and admitted only two exhibits—footage from a bodycam and a Google map of the area—neither of which contradicted the officers' testimony that they observed him violate several traffic laws.

According to the uncontroverted evidence, the officers saw Lomax driving at an unusually slow speed and decided to follow him for observation.[6] They saw Lomax commit several traffic violations, including: (1) stopping in a crosswalk;[7] (2) turning without using a blinker;[8] (3) changing lanes without signaling the lane change for at least 100 feet;[9] and (4) obstructing a second crosswalk.[10] They then turned on their lights and sirens in an attempt to pull Lomax over.[11] But Lomax faked them out; he pulled over to the right side of the street at first, then he pulled back out into traffic, accelerated away from them, and drove through a red light.[12] Lomax rounded a corner,[13] drove up onto the sidewalk,[14] blew out his tire,[15] then exited the vehicle and fled on foot.[16] The officers exited their own car and chased after him.[17] Lomax jumped a chain-link fence into the yard of a nearby home.[18] The officers followed and chased

---

[5] *Id.* at 6.

[6] ECF No. 26 at 12:10–12.

[7] *Id.* at 13:8.

[8] *Id.* at 14:4–6.

[9] *Id.* at 16:12–17.

[10] *Id.* at 88:15–17.

[11] *Id.* at 19:1–4.

[12] *Id.* at 19:7–20.

[13] *Id.* at 21:14–22:6.

[14] *Id.* at 92:19–22.

[15] *Id.* at 92:23–25.

[16] *Id.* at 23:4–5.

[17] *Id.* at 25:16–17.

[18] *Id.* at 26:21–22.

Lomax around the property a couple of times, threatening to taze him if he didn't stop running, and Lomax ultimately surrendered.[19]

At some point during this chase around the house, one of the officers saw Lomax pull a gun out of his pocket and toss it near the front of the house.[20] As Lomax got in the back of the police car, he asked for the money that he dropped.[21] Approximately $1,000 in cash was found on the front porch near a gun;[22] Lomax denied ownership of the gun.[23]

Lomax moved to suppress his statements and the gun. After an evidentiary hearing, Judge Leen found that Lomax was not seized until he was finally cuffed and detained in the backyard.[24] And because he wasn't seized as he ran around the property, the gun was abandoned property that the officers lawfully obtained.[25] Judge Leen therefore recommends that I deny the suppression motion.[26]

## Discussion

Lomax objects to three conclusions in Judge Leen's report and recommendation:[27] (1) that the evidentiary hearing was unnecessary;[28] (2) that he was not seized until after he discarded the firearm;[29] and (3) that the officers had reasonable suspicion to conduct a traffic

---

[19] *Id.* at 28:10–11; 30:1–6.

[20] *Id.* at 98:11–15; ECF No. 17, Exhibit B (bodycam video) file name: 467G-file 3 at 4:20–4:30.

[21] ECF No. 17, Exhibit B (bodycam video) file name: 467G-file 2 at 6:28–6:40; ECF No. 26 at 33:4–9.

[22] ECF No. 26 at 31:11–19.

[23] *Id.*

[24] ECF No. 27 at 16.

[25] *Id.* at 17–18.

[26] *Id.* at 21.

[27] ECF No. 30.

[28] *Id.* at 3.

[29] *Id.* at 3–4.

stop.[30] The first conclusion is not objectionable. Judge Leen commented on the hearing's necessity (or lack thereof) after she already conducted it. That statement was not a legal conclusion; it was dicta voiced in reference to Lomax's refusal to testify at the hearing despite his earlier representations that he would. So, I review only Lomax's second and third objections de novo.

### A. Specific-objection standard

A district court reviews objections to a magistrate judge's proposed findings and recommendations de novo.[31] "[R]eview de novo means that the court should make an independent determination of the issues and should not give any special weight to the prior determination of the [magistrate judge]."[32] "Normally, the judge . . . will consider the record [that] has been developed before the magistrate and make [her] own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate."[33] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[34]

### B. Lomax was not yet seized when he abandoned the gun.

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[35] The Fourth Amendment protects "people, places," and their reasonable and legitimate expectations of privacy.[36] The touchstone of the Fourth Amendment is reasonableness.[37] Evidence obtained in

---

[30] *Id.* at 4.

[31] *United States v. Reyna-Tapia*, 28 F.3d 1114, 1121–22 (9th Cir. 2003).

[32] *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (quoting *United States v. First City National Bank*, 386 U.S. 361, 368 (1967) (internal quotations and ellipses omitted)).

[33] *Id.* at 675.

[34] *Reyna-Tapia*, 328 F.3d at 1121–22.

[35] U.S. CONST. amend. IV.

[36] *Katz v. United States*, 389 U.S. 347, 350–51 (1967).

[37] *Florida v. Jimenez*, 500 U.S. 248, 250 (1991).

violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree."[38]

Law-enforcement officers may reasonably stop an automobile if they "have probable cause to believe that a traffic violation has occurred."[39] The Supreme Court has repeatedly held that traffic stops are not invalid as long as the officers had probable cause to believe that a traffic violation occurred—even if that traffic stop is subjective pretext to investigate some other type of crime.[40] Not all interactions between citizens and law enforcement are considered "seizures" under the Fourth Amendment. "Only when the officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."[41] And an individual is not seized within the meaning of the Fourth Amendment when he flees from the police.[42]

There are two distinct moments that deserve attention in this case: when the officers put on their lights to pull Lomax over, and when Lomax was finally detained in the yard after the foot pursuit. Lomax argues that he didn't commit any traffic violations. So, he contends, the officers lacked probable cause to pull him over, and all evidence that was recovered and every statement that he made was fruit of the poisonous attempted-traffic-stop tree.

---

[38] *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963); *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016); *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) ("Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule.") (citing *Wong Sun*, 371 U.S. at 484–87).

[39] *Whren v. United States*, 517 U.S. 806 (1996) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) and *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)).

[40] *See Whren*, 517 U.S. at 812–13; *United States v. Robinson*, 414 U.S. 218, 221 & n.1 (1973); *accord Scott v. United States*, 436 U.S. 128, 138 (1978) ("Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."). Lomax argues that subjective intent to investigate a crime unrelated to the traffic violation makes the traffic stop illegal. ECF No. 15 at 6. But all of his cited authority predates *Whren*, which held that it doesn't.

[41] *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

[42] *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Brower v. Inyo Cnty.*, 489 U.S. 593, 596–97 (1989).

But the uncontroverted evidence established that Lomax violated several traffic laws before the officers attempted to pull him over. Both officers testified that, before they turned on their lights and siren, they saw Lomax obstruct a crosswalk, turn without a blinker, and change lanes without signaling his intention for the requisite distance. Any one of these acts, standing alone, would be sufficient to justify a traffic stop. But these traffic violations weren't captured on the officers' body cams, and Lomax argues—without any impeaching evidence—that their testimony isn't credible, so I shouldn't consider it as evidence of probable cause. Lomax has given me no reason to discredit the officers' testimony, and after my own review of the evidentiary-hearing transcript and audio recording, I find none. I therefore conclude that the officers had probable cause to turn on their lights and attempt a traffic stop on Lomax.

I also find that, in line with *California v. Hodari D.*,[43] Lomax was not seized until he was cuffed and detained in the yard. In *Hodari D.*, two patrol officers happened upon a group of teenagers huddled around a car parked along the curb.[44] Both officers wore plain clothes with a jacket that said "Police" on the front and back, and they were driving an unmarked car.[45] When the youths saw the car approach them, they panicked and ran away.[46] The officers chased after them, and right before Hodari D. was tackled to the ground, he threw away a small crack rock.[47] In a 7–2 opinion, the United States Supreme Court held that: (1) Hodari D. was not seized under the Fourth Amendment until he was tackled to the ground; and (2) the crack rock was abandoned property and not the fruit of a seizure.[48]

Lomax tries to distinguish *Hodari D.* He argues that the officers in *Hodari D.* never activated their emergency lights or sirens, never told Hodari D. to stop or "get on the fucking

---

[43] *California v. Hodari D.*, 499 U.S. at 626.

[44] *Id.* at 622.

[45] *Id.*

[46] *Id.* at 623.

[47] *Id.*

[48] *Id.* at 629.

ground," and never pointed a firearm and taser towards the teenager—all facts that occurred in this case.[49] But those facts are legally inconsequential. Although all of those actions may constitute separate showings of authority, the *Hodari D.* Court expressly held that a defendant is not seized by a show of authority if he doesn't comply with that showing.[50]

I therefore find that Lomax was not seized as he fled from the police; he was seized under the Fourth Amendment when he finally surrendered in the yard. Because he was not yet seized when he abandoned the gun, it was not the fruit of a seizure. So, I deny Lomax's motion to suppress the gun. I also decline to suppress Lomax's statements. The officers mirandized Lomax, and he indicated that he understood his rights.[51] Any statements he made after that point were made with a valid waiver of his *Miranda* rights.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Lomax's motion to suppress **[ECF No. 15] is DENIED**, Lomax's objection **[ECF No. 30]** to Magistrate Judge Leen's Report and Recommendation is **OVERRULED**, and Magistrate Judge Leen's Report and Recommendation **[ECF No. 27] is ACCEPTED and ADOPTED**.

Dated: June 19, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[49] ECF No. 30 at 3.

[50] *Hodari D.* 499 U.S. at 629 ("In sum, assuming that [the officer's] pursuit in [*Hodari D.*] constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled.").

[51] ECF No. 17, Exhibit B (bodycam video) file name: 467G-file 2 at 5:30–5:42.

7